## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Jason Sorensen,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **Wallingford Board of Education,** | : | |
| | : | **December 17, 2020** |
| **Defendant** | : | |

### COMPLAINT

## I.    INTRODUCTION

1.      The plaintiff, Jason Sorensen, brings this action alleging that his employer, the defendant Wallingford Board of Education, has discriminated against him in the terms and conditions of his employment because of his disability; has failed and refused to provide him with reasonable accommodations that would ensure his ability to perform the essential functions of his job and provide him with access to the benefits and privileges of employment equal to those enjoyed by similarly-situated employees without disabilities; and has retaliated against him for his exercise of rights in complaining about discriminatory treatment and his efforts to obtain reasonable accommodations for his disability. The plaintiff states claims for violation of his rights under the Americans with Disabilities Act, 42 U.S.C. 12101, *et seq,* as amended, and the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. 46a-60, et seq. The plaintiff seeks injunctive relief; compensation for his economic damages and for his pain, suffering, and emotional distress; reasonable attorney's fees and costs; and prejudgment and post-judgment interest; and such other relief as the Court may award.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C. §1331.  With respect to the

state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that

the state law claims are so related to the federal claims that they form part of the same case

or controversy under Article III of the United States Constitution.

3.    Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C.

§1391(b), because a substantial part of the events giving rise to his claim occurred within this

judicial district.

## III.    ADMINISTRATIVE PROCEEDINGS

4.    On or about September 21, 2021, the Connecticut Commission on Human

Rights and Opportunities issued a release of jurisdiction as to the plaintiff's administrative

complaint of disability discrimination and retaliation.

5.    On or about September 30, 2021, the federal Equal Employment Opportunities

Commission issue a Right to Sue letter in connection with the plaintiff's administrative

complaint of disability discrimination and retaliation.

## IV.    PARTIES

6.    The plaintiff is Jason Sorensen, who resides at 36 Royal Oak Drive, West

Hartford, CT 06107.

7.    Jason Sorensen is a qualified person with a disability as that term is defined at

42 U.S.C. §12102(1) and is disabled as that term is defined at Conn.Gen.Stat.§46a-51(15). In

or about 2019, Jason Sorensen was diagnosed with Acute Myeloid Leukemia, a form of blood

cancer, was treated and received an allogenic stem cell (bone marrow) transplant. He is

substantially limited in major life activities, inasmuch as his condition and treatment for his condition place him at a very high risk of infection that can be life-threatening.

8.     At all times relevant to this Complaint, Jason Sorensen is an employee of the defendant as that term is defined at 42 U.S.C. §12111(4) and Conn.Gen.Stat. §46a-51(9).

9.     The defendant Wallingford Board of Education (hereinafter, "WBE") is organized under the Charter of the Town of Wallingford and the laws of the State of Connecticut, with offices at 100 South Turnpike Road Wallingford, CT 06492. The WBE employs more than five hundred (500) people and operates eight elementary schools, two middle schools, and two high schols. At all times relevant to the Complaint, the WBE is an employer as that term is defined at 42 U.S.C. §12111(5) and Conn.Gen.Stat. §46a-51(10).

## V.     FACTS

### A.     *Plaintiff's Leave of Absence and Return from Leave of Absence*

10.     The plaintiff has been employed by the defendant as an English teacher at the high school level for eight years.

11.     In or about 07/11/2019 the plaintiff was diagnosed with Acute Myeloid Leukemia, and promptly informed the defendant of his diagnosis.

12.     From on or about 08/22/2019 and for the remainder of the 2019-2020 school year, the plaintiff was on an approved long term leave pursuant to the terms of the collective bargaining agreement negotiated between the WBE and the Wallingford Education Association.

13.     Beginning in or about November 2019, and per the instructions of the plaintiff's physicians, he had been self-isolating due to a highly compromised immune system.

14.     On or about March 15, 2020, Governor Lamont issued an Executive Order closing all public schools due to the coronavirus pandemic.

15.     For the remainder of the school year, all instruction in the WBE was conducted remotely.

16.     Beginning in or about May 2020, the plaintiff made efforts to return from his approved long term leave of absence, in order to resume full time teaching duties in the English Department at WBE's Sheehan High School for the 2020-2021 school year.

17.     When the plaintiff attempted to return the defendant repeatedly placed obstacles in his way, often involving false statements and violations of his rights under the law and under the defendant's collective bargaining agreement with the plaintiff's union, as set out in more detail below.

18.     The defendant first falsely claimed the plaintiff could not return to his previous assignment because he had not been on an approved long term leave.

19.     The defendant then stated that it was only discussing the plaintiff's return to teaching as a "courtesy" and that he had no right to his former position.

20.     The defendant then told the plaintiff that if he chose to return to his previous assignment, it would have to be as a part time (0.6) teacher.

21.     The defendant then told the plaintiff that if he wanted to work full time he would have to accept an assignment in a completely different subject area. The plaintiff's teaching certification area since he was initially licensed in 2011 had been English, but the assignment the defendant offered was in Coding.

4

22.     At the same time that the defendant represented to the plaintiff that Coding was the only full time assignment available to him, there were at least at least four positions in his certification area for which non-renewal notices were issued for the following year.

23.     The plaintiff complained to the defendant that he believed that it was violating his rights under state and federal disability discrimination laws.

24.     Instead of conducting an investigation, the defendant informed the plaintiff that it had decided that the conduct of which he complained was neither discriminatory nor retaliatory.

**B.     *Plaintiff's Return to Work and the Fall 2020 Semester***

25.     As the defendant was beginning to make plans for the 2020 school reopening, it circulated a questionnaire to its teachers asking them to identify any medical restrictions they had and stating that it would set up individual interviews with teachers who had medical restrictions.

26.     Although the plaintiff responded to the questionnaire stating that he had a disability and would require accommodations – facts already well known to the defendant – the defendant did not set up a meeting with him. Instead, the plaintiff had to contact the defendant and undergo several meetings with union involvement in order to attempt to resolve these issues.

27.     In the weeks leading up to the first day of school, the plaintiff participated in several meetings with the defendant, discussing his disability and seeking reasonable accommodations.

28.     Over the course of these meetings, the defendant denied requests for reasonable accommodations, unreasonably delayed providing reasonable accommodations,

and made representations on which it later reneged. Some instances of this conduct are set out below.

29.     The defendant represented that in the Fall semester it could not provide reasonable accommodation for a teaching position for the plaintiff, and his only option would be to remain on leave, even though there were other teachers who would be performing remote instruction during the semester.

30.     The defendant refused to consider as a reasonable accommodation assigning the plaintiff to perform alternative work that could be performed remotely, including co-teaching, lesson planning, curriculum development, conferencing/student support, or grading.

31.     The defendant had organized the eight Professional Development days scheduled before the beginning of the school year so that teachers were required to be physically present in their classrooms but participating remotely via their computers. The plaintiff requested that he be permitted to participate remotely from his computer at home. Instead, the defendant permitted him to participate remotely for the first day of Professional Development but refused to provide permission for the remaining seven days until the first day of Professional Development had been completed.

32.     The defendant represented to the plaintiff that if the defendant switched to all remote instruction at any time over the course of the semester, he would be permitted to return to his regular, full time teaching assignment. Later, the defendant denied that it would do so, and subsequently entered into an agreement with the plaintiff's union stating only that it "may" do so.

33.     Immediately before Fall classes started, and after having denied any reasonable accommodation in which the plaintiff would perform remote instruction, the defendant

suddenly announced that the plaintiff could teach for half days remotely, with the requirement that he use leave time for half of each work day. The plaintiff agreed to accept the accommodation as the only alternative to spending the entire semester on leave.

34.     Shortly thereafter, having previously refused the plaintiff's request to do so, the defendant offered to accommodate the plaintiff by permitting him to perform non-teaching duties one-quarter time. Although the plaintiff agreed to accept the accommodation, the defendant did not provide it.

35.     During the semester, the plaintiff provided remote instruction for five classes and spent one half-day per week collaborating with the onsite substitute assigned to his classes. The defendant required the plaintiff to use leave time for the remainder of the time even though he also had to use that time to prepare for classes and perform other pre- and post-classroom tasks.

36.     The collective bargaining agreement covering the plaintiff's employment provides that a teacher with an assignment of five classes is "full time," but the defendant required the plaintiff to use accrued time to make up what it considered to be the difference between his five class assignment and a "real" full time assignment.

37.     During the semester, one half of the plaintiff's classes were taught by an employee of the defendant with no prior experience as a high school teacher in the district. It is well-established practice in the district, even where there is a long term substitute and the regular teacher is completely unavailable, that the regular teacher is still designated as the "Lead Teacher." Although the plaintiff was more qualified and more experienced than the onsite teacher and was teaching half-time, the defendant designated the onsite teacher as the "Lead Teacher" and designated the plaintiff as the "Co-Teacher."

38.     The plaintiff complained to his school principal about being given the lesser "Co-Teacher" designation; the principal refused to designate the plaintiff as "Lead Teacher."

39.     On or about October 6, 2020, the plaintiff filed an administrative complaint of disability discrimination with the Connecticut Commission on Human Rights and Opportunities (CHRO) and the federal Equal Employment Opportunity Commission (EEOC). The defendant was served with notice of the plaintiff's complaint on or about November 16, 2020.

**C.      *"Hybrid" Teaching and the Spring 2021 Semester***

40.     For the Spring 2021 semester, the defendant adopted a "hybrid" teaching schedule, whereby students received some in-person and some remote instruction.

41.     Under the defendant's new hybrid teaching model, some non-disabled teachers continued to provide remote instruction. The plaintiff also continued to provide remote instruction.

42.     Only at this point, where some non-disabled teachers were assigned to remote instruction and some were assigned to in person instruction, did the defendant agree that the plaintiff would not be required to use sick time to "make up" remote teaching time.

43.     In January 2021, when the defendant transitioned remote students to in person classes, students were encouraged to change their remaining remote instruction to the classroom and away from the plaintiff. However, when the defendant received requests from parents to shift in person students to more remote learning, students were not encouraged to maintain remote instruction with the plaintiff. The plaintiff complained to his school principal about the apparent devaluing of his work compared to the other teacher but received no response.

8

44.     In or about March 2021, the plaintiff expressed interest in transferring from Sheehan High School to Lyman Hall High School. The request to transfer was granted.

45.     Around the time that the plaintiff's request to transfer was granted, and per the established practice, the plaintiff submitted requests for the classes he wished to teach in the following school year at Lyman Hall. The plaintiff provided his request to the head of the English Department head and made him aware that he was transferring from Sheehan High School to Lyman Hall High School.

46.     On or about April 30, 2021, the defendant's Superintendent of Schools tendered his resignation effective July 1, 2021.

47.     On or about June 9, 2021, the plaintiff was notified of his class assignments for Fall 2021 at Lyman Hall, none of which corresponded to his requests. The plaintiff learned that his non-disabled colleagues had been notified their class assignments several weeks earlier.

48.     When the plaintiff complained about his class assignments to the head of the English Department, he was told that he had been assigned as if he were a new teacher joining the district instead of an experienced (tenured?) teacher who at the time had been in the district for more than seven years.

49.     Although the plaintiff's colleagues had received most of the class assignments they had requested and the plaintiff had received none, the department head refused to alter the schedule.

50.     When the plaintiff repeated his request that class assignments be reconsidered, the department head told him that the assignments were made before he was aware of the plaintiff's intent to transfer to Lyman Hall, which statement was untrue.

9

51.     As the Spring semester came to an end at Sheehan High School, arrangements were made for a teacher appreciation luncheon – but only for those teachers who were on site – and for a final Faculty Meeting for the year – but with no provision for the plaintiff to participate remotely.

### D.     Plaintiff's Requests for Reasonable Accommodations for the Fall 2021 Semester

52.     In or about July 2021, the plaintiff notified the defendant that his medical treatment team had approved the beginning of his "reintegration," in which he would be able to begin entering public spaces during off-hours and while masked.

53.     On or about August 18, 2021, the plaintiff provided the Superintendent with a detailed request for accommodations for the Fall 2021 semester.

54.     By this point in time, the plaintiff had had numerous interactions with the defendant's Superintendent and other administrators in which he had described the nature of his disability, the risks associated with Covid-19 for someone with his disability, and many of the reasonable accommodations he routinely required.

55.     Despite the plaintiff's history of open, frequent communication with the defendant, obtaining accommodations continued to require that the plaintiff repeat requests, endure unnecessary delays, and suffer the outright denial of some requests for even minor accommodations.

56.     As an example of a denial of a reasonable accommodation during this time period, on or about November 1, 2021, the plaintiff made a written request that he be permitted to remotely participate in a Personal Development (PD) day. The plaintiff had made such reasonable and non-burdensome requests in the past, dating back to August 2020.

10

57.     On this occasion, the assistant superintendent denied his request, stating in an email that "tomorrow's professional learning day is an in person event for all professional staff."

58.     The assistant superintendent's response failed to explain what, if any, unreasonable burden would be posed by granting the plaintiff's request for an accommodation – an accommodation that had been granted on several other occasions.

59.     The defendant has failed to recognize, plan for, timely address, or appropriately grant many of the plaintiff's requests for reasonable accommodation, beginning in August 2020 and continuing through the Fall semester of the 2021 school year.

60.     The defendant's conduct toward the plaintiff, including its repeated inaction, indifference, delays, and denials of his requests for reasonable accommodation for his disability has had the effect of isolating and marginalizing the plaintiff from his colleagues, his students, and his students' parents.

61.     Coping with the defendant's repeated inaction, difference, delays, and denials of his requests for reasonable accommodation for his disability has required that the plaintiff needlessly devote time and attention to every communication with the defendant.

62.     The defendant's conduct as described above has caused the plaintiff to suffer anxiety, sleeplessness, upset, pain, suffering, and emotional distress.

63.     The defendant's conduct as described above has interfered with the plaintiff's professional development.

64.     The defendant's conduct as described above has caused the plaintiff to suffer economic damages.

11

## VI. COUNT ONE: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

1. The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 64, above.

65. The defendant's conduct as described above constitutes discrimination against the plaintiff on the basis of disability in regard to the terms, conditions, and privileges of his employment, including by limiting, segregating, or classifying the plaintiff in a way that adversely affected and affects his opportunities or status because of the plaintiff's disability, in violation of 42 U.S.C. §12112(b)(1).

## VII. COUNT TWO: FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF THE ADA

1. The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 64, above.

65. The defendant's conduct as described above includes instances in which it failed to make reasonable accommodations to the plaintiff's known physical limitations where the accommodation would not impose an undue hardship on the operation of the defendant's business in violation of 42 U.S.C. §12112(b)(5)(A).

66. The defendant's conduct as described above includes instances in which it denied employment opportunities to the plaintiff where such denial was based on the need of the defendant to make reasonable accommodation to the plaintiff's physical impairments in violation of 42 U.S.C. §12112(b)(5)(B).

## VIII. COUNT THREE: RETALIATION IN VIOLATION OF THE ADA

1. The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 64, above.

65.    The defendant's conduct as described above constitutes discrimination against the plaintiff because he has opposed the defendant's unlawful employment practices in violation of 42 U.S.C. §12203(a).

## IX.    COUNT FOUR: DISABILITY DISCRIMINATION IN VIOLATION OF THE CFEPA

1.    The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 64, above.

65.    The defendant's conduct as described above constitutes discrimination against the plaintiff on the basis of physical disability in regard to the terms, conditions, and privileges of his employment in violation of Conn.Gen.Stat. §46a-60(b)(1).

## X.    COUNT FIVE: RETALIATION IN VIOLATION OF THE CFEPA

1.    The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 64, above.

65.     The defendant's conduct as described above constitutes discrimination against the plaintiff because he opposed the defendant's discriminatory employment practices.

**PETITION FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that the Court order the following relief:

1.     Enjoin the defendant from discriminating against the plaintiff on account of his disability and/or retaliating against the plaintiff on account of his exercise of the right to be free from disability discrimination in the workplace;

2.     Award plaintiff his economic losses, including lost wages and benefits of employment;

3.     Award plaintiff compensatory damages, including damages for his pain, suffering, and emotional distress caused by the defendant's wrongful conduct;

4.     Award the plaintiff his reasonable attorney's fees and costs; and

5.     Such other relief as the Court deems appropriate.

## REQUEST FOR A JURY TRIAL

The plaintiff respectfully requests a jury trial as to all of his claims to the extent that he is entitled by law.

RESPECTFULLY SUBMITTED
JASON SORENSEN,
THE PLAINTIFF, by

 / s / Peter Goselin
Peter Goselin ct06074
The Law Office of Peter Goselin
557 Prospect Avenue, 2nd Floor
Hartford, Connecticut 06105
Tel. 860-580-9675
Fax 860-232-7818
pdgoselin@gmail.com